* * * * * * * * * * *
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Rideout and the briefs and arguments of the parties. The appealing parties have not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties. The Full Commission affirms the Opinion and Award of Deputy Commissioner Rideout and enters the following Opinion and Award:
 * * * * * * * * * * *
The Full Commission finds as a fact and concludes as a matter of law the following, which were entered into by the parties as:
 STIPULATIONS
1. On May 6, 2003, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act. *Page 2 
2. On that date, an employment relationship existed between plaintiff and defendant. Defendant was self-insured for workers' compensation.
3. On May 6, 2003, plaintiff sustained a compensable lumbar spine injury according to the Opinion and Award by Deputy Commissioner Baddour filed September 28, 2006, which is hereby incorporated by reference.
4. Plaintiff's employment with Courtyard by Marriott was terminated for reasons unrelated to his workers' compensation claim in 2004, and plaintiff subsequently has worked for Summit Hospitality Group, Ltd. and/or their affiliated properties since May 17, 2004.
5. The following documentary exhibits, attached hereto, were admitted into evidence by the parties before Deputy Commissioner Rideout:
 a. All of plaintiff's medical records.
 b. All Industrial Commission Forms and Orders filed since entry of the previous Opinion and Award on September 28, 2006.
 c. Plaintiff's Answers to Defendant's Interrogatories and Request for Production of Documents (Second Set).
 d. Plaintiff's employment and medical files from Residence Inn.
 e. Release of Medical Records provided to defendant to allow defendant to obtain plaintiff's medical records from his family physician.
 f. Letter dated December 2, 2009, from plaintiff's counsel to defendant's counsel.
 g. Email correspondence between plaintiff's and defendant's counsel dated: 3/23/09, 9/28/09, 9/29/09, 10/1/09, 10/12/09, 10/13/09, 10/28/09, 11/2/09, 11/4/09, and 11/30/09. *Page 3 
 h. Reports prepared by ICS Merrill.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 59 years old. Plaintiff's native language is Arabic. His ability to speak and understand English is limited. Plaintiff testified with the assistance of an interpreter.
2. On May 6, 2003, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant. Thereafter, defendant denied that the medical treatment plaintiff sought for his lumbar spine condition was caused by the accident on May 6, 2003.
3. Deputy Commissioner Baddour heard this matter on October 25, 2005. On September 28, 2006, Deputy Commissioner Baddour filed an Opinion and Award in which he found as fact that "plaintiff's lumbar back condition for which Dr. Lestini has provided treatment, including the disc protrusion at L4-L5, was caused by plaintiff's accident at work on May 6, 2003." Deputy Commissioner Baddour ordered that "[d]efendant shall pay for medical expenses incurred or to be incurred as a result of plaintiff's compensable low back condition as may reasonably be required to effect a cure, provide relief, or lessen the period of disability, including treatment recommended by Dr. Lestini and healthcare providers to whom Dr. Lestini may refer plaintiff."
4. After Deputy Commissioner Baddour filed his Opinion and Award, plaintiff continued to receive treatment from Dr. Lestini, who recommended discography if plaintiff was *Page 4 
interested in undergoing surgery as treatment for his injury. Thereafter, the patient/physician relationship between plaintiff and Dr. Lestini ended. On the last date he evaluated plaintiff, Dr. Lestini stated that plaintiff has "legitimate pain and can continue further treatment including possible re-scan with a lumbar MRI and possible injectional therapy and even discography".
5. Subsequently, the parties agreed that Dr. Shehzad Choudry would be plaintiff's authorized treating physician. Dr. Choudry began treating plaintiff on May 12, 2009. On that date, plaintiff described his condition as getting progressively worse. Dr. Choudry recommended medications, physical therapy, and epidural steroid injections.
6. Dr. Choudry ordered a lumbar MRI, as had been previously suggested by Dr. Lestini. Dr. Choudry reviewed the MRI on September 16, 2009. Based on his review of the MRI, Dr. Choudry referred plaintiff for an orthopedic evaluation by Dr. Leonard Nelson.
7. Plaintiff requested that defendant authorize the referral to Dr. Nelson. Defendant responded that before the referral would be authorized, plaintiff would have to produce his prior medical records from Raleigh Orthopedic Clinic. Plaintiff provided defendant with copies of his prior treatment records from Raleigh Orthopedic Clinic, which were not related to the treatment of plaintiff's lumbar spine. Thereafter, plaintiff renewed his request for authorization of an evaluation by Dr. Nelson. Defendant then denied his request for authorization of the referral.
8. Defendant next instructed plaintiff that it required Dr. Choudry's opinion concerning the relationship between plaintiff's current condition and his accident on May 6, 2003. Plaintiff obtained a written statement from Dr. Choudry stating that the current condition of plaintiff's lumbar spine is directly related to his injury on May 6, 2003. Dr. Choudry also expressed the opinion that plaintiff's need for an orthopedic evaluation was extremely urgent. *Page 5 
9. After providing defendant with Dr. Choudry's written opinion, plaintiff again requested authorization for the orthopedic evaluation by Dr. Nelson, as ordered by Dr. Choudry, his authorized treating physician. Defendant again refused to authorize the evaluation.
10. Defendant then requested discovery seeking copies of plaintiff's medical and employment records from his new employer Residence Inn. This request was based upon a statement in the October 21, 2009, record from his appointment with Dr. Choudry. The record contains the following statement, "After his second ESI, he began having right leg pain or some other issue that happened, including at work where he strained very hard and affected his right leg, becoming intensely severe." However, in his next record Dr. Choudry clarified this note, stating as follows, "I am quite upset with the fact that he still has not seen a spine surgeon and workmen's compensation is refusing care calling it a new injury. I really do not think that is the case. I think they are taking my words out of context and punishing the patient for my poor dictation skills. I do suspect that he more than likely had exacerbation of his chronic issue and he definitely needs to see a spine surgeon."
11. As requested, plaintiff provided defendant with copies of his employment records and medical records from his new employer Residence Inn. There is nothing in the records to suggest that plaintiff sustained any kind of back injury while working for Residence Inn. Based on these records, plaintiff's testimony, and the testimony of Mr. Matt Smith, general manager of Residence Inn, the undersigned find as fact that plaintiff did not sustain any back injury while employed by Residence Inn. Defendant presented no competent evidence that plaintiff sustained any back injury while employed by Residence Inn.
12. After producing his employment records from Residence Inn, plaintiff renewed his request for authorization of the referral to Dr. Nelson. Again, defendant refused his request. *Page 6 
13. Dr. Choudry excused plaintiff from all work beginning October 21, 2009. After being excused from work, plaintiff applied for FMLA leave from his employer, Residence Inn. On November 20, 2009, Dr. Choudry again excused plaintiff from all work. Defendant refused plaintiff's request for payment of temporary total disability compensation.
14. On plaintiff's motion, Special Deputy Commissioner Boyer entered an Order on October 21, 2009, compelling defendant to authorize the orthopedic evaluation by Dr. Nelson, as prescribed by Dr. Choudry. Defendant appealed. On November 6, 2009, Deputy Commissioner Stephenson entered an Order compelling defendant to authorize the evaluation by Dr. Nelson. Defendant filed a motion for reconsideration. On November 13, 2009, Deputy Commissioner Stephenson entered an Order denying defendant's motion for reconsideration.
15. On December 10, 2009, Dr. Nelson evaluated plaintiff's lumbar spine condition. Dr. Nelson recommended an L4-S1 posterior lumbar decompression and fusion. Dr. Nelson's impression was "Spondylolisthesis L4-L5 with spinal stenosis resulting in right sciatica secondary to a work-related injury." Dr. Nelson excused plaintiff from all work.
16. Plaintiff has been medically restricted from all work since October 21, 2009. Plaintiff has performed no work and has earned no wages since October 21, 2009.
17. The surveillance reports and videos produced by defendant are not relevant to determining the cause of plaintiff's current lumbar spine condition or what medical treatment is reasonably necessary to treat the same.
18. The surveillance reports and videos produced by defendant are not medical evidence of plaintiff's ability to earn wages and, consequently, are not competent to rebut the medical evidence that plaintiff has been restricted from all work since October 21, 2009. *Page 7 
19. The surveillance reports and videos produced by defendant do not constitute evidence of earning capacity and, therefore, are not competent to rebut the medical evidence that plaintiff has been restricted from all work since October 21, 2009.
20. The current condition of plaintiff's lumbar spine is caused by the accident on May 6, 2003. The lumbar decompression and fusion surgery recommended by Drs. Nelson and Choudry is reasonably necessary to effect a cure, provide relief, and lessen plaintiff's period of disability.
21. As a result of his May 6, 2003, injury, plaintiff has been incapable of earning wages from defendant or any other employer since October 21, 2009.
22. Defendant's defense of plaintiff's claim for medical and disability compensation was based in stubborn unfounded litigiousness. Defendant produced no competent expert opinion testimony that the current condition of plaintiff's lumbar spine, and his current need for medical treatment, are not related to his compensable May 6, 2003 injury. Rather, all of the competent medical evidence shows that the current condition of plaintiff's lumbar spine, and his current need for medical treatment, are related to his compensable May 6, 2003 injury.
23. All of the competent medical evidence shows that plaintiff has been medically restricted from all work since October 21, 2009. Dr. Choudry has restricted plaintiff from all work since October 21, 2009. Dr. Nelson restricted plaintiff from all work. Dr. Lestini acknowledged that Dr. Choudry is in a better position to assess plaintiff's ability to work and therefore deferred to Dr. Choudry's opinion regarding the same. The surveillance video tape produced by defendant does not constitute medical evidence that plaintiff is able to work. Likewise, the surveillance video tape is not evidence of earning capacity. *Page 8 
24. Defendant filed a motion to add Residence Inn as a party-defendant. However, defendant produced no competent evidence that plaintiff sustained any back injury while employed by Residence Inn. All of the evidence, including plaintiff's testimony, plaintiff's employment and medical files from Residence Inn, and the testimony of general manager Matt Smith, show that plaintiff did not injure his back and was not involved in any accidents while employed by Residence Inn.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On May 6, 2003, plaintiff sustained a lumbar spine injury as a result of an accident arising out of and in the course of his employment with defendant. N.C. Gen. Stat. § 97-2(6).
2. As a result of his May 6, 2003, injury, plaintiff is entitled to temporary total disability compensation at the rate of $309.48 per week beginning October 21, 2009, and continuing until plaintiff returns to work or further Order of the Commission. N.C. Gen. Stat. § 97-29.
3. Subject to the provisions of N.C. Gen. Stat. § 97-25.1, plaintiff is entitled to have defendant provide all medical treatment, incurred or to be incurred, necessitated by the March 6, 2003, compensable lumbar spine injury, including the surgery recommended by Dr. Leonard Nelson, when bills for the same have been approved pursuant to Industrial Commission Procedures. N.C. Gen. Stat. §§ 97-2(19); 97-25; 97-25.1.
4. For defendant's unreasonable defense of plaintiff's claim for medical and disability compensation, plaintiff is entitled to payment of his litigation costs and his attorney's fees. N.C. Gen. Stat. § 97-88.1.; Sparks v. Mountain BreezeRestaurant, 55 N.C. App. 663, 286 S.E.2d 575 (1982). *Page 9 
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law the Full Commission makes the following:
 AWARD
1. Defendant shall pay plaintiff temporary total disability compensation at the rate of $309.48 per week beginning on October 21, 2009, and continuing until he returns to work or until further Order of the Commission. Those amounts which have accrued shall be paid in a lump sum to plaintiff; the lump sum amount shall not be subject to the attorney fees as provided below.
2. Defendant shall pay all medical expenses incurred or to be incurred by plaintiff as a result of plaintiff's May 6, 2003, injury, including the surgery recommended by Dr. Leonard Nelson, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, or give relief, or may tend to lessen the employee's period of disability, when bills for same have been submitted and approved by the Industrial Commission.
3. A reasonable attorney's fee of twenty-five percent (25%) of the future compensation awarded to plaintiff in paragraph one (1) above, is hereby approved, and every fourth (4th) payment due plaintiff shall be paid directly to plaintiff's attorney.
4. Plaintiff is entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1. Defendant shall pay plaintiff's counsel an attorney's fee of twenty-five percent (25%) of the accrued compensation due plaintiff. This amount shall not be deducted from the amount owed plaintiff, but shall be paid in addition to any sums due and owing to plaintiff.
5. Defendant shall pay the costs. *Page 10 
This the 15th day of December, 2010.
 S/________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/_______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/______________ LINDA CHEATHAM COMMISSIONER *Page 1